# Staunton

## Acton Griscom v. J. S. Childress, Sheriff of Montgomery County, Maurice H. Neumuller and Laura Neumuller.

September 6, 1944.

Record No. 2765.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*C. C. Daniels* and *J. P. Saul, Jr.*, for the appellant.

*W. H. Colhoun* and *V. M. Sowder*, for the appellees.

HUDGINS, J., delivered the opinion of the court.

Maurice H. Neumuller and Laura Neumuller, landlords, caused certain culm coal and machinery owned by the Hard Coal Mines, Inc., tenants, to be distrained for rents due and in arrears. J. L. Childress, sheriff of Montgomery county, pursuant to the levy, offered the property for sale at auction on September 27, 1941, in Christiansburg. The property was cried out to W. L. McClung of Salem for $5,100. On the request of the bidder and with the consent of the attorney for the landlords, the sheriff gave McClung a few days in which to pay the amount bid. The sheriff's repeated demands upon McClung for payment were unavailing. Finally, on October 10, he notified McClung that unless payment was made by October 13 he would resell the property. Hearing nothing from the purchaser, the sheriff advertised the property for resale on October 31, 1941. On October 30, 1941, J. P. Saul, acting as attorney for Acton Griscom, to whom McClung claimed he had assigned his bid and interest in the property, tendered the sheriff $5,100, plus interest from September 27, 1941, and all costs incurred by delay in payment and in readvertising the property for sale. The sheriff, with the consent of the attorney for the landlords, refused to accept payment and sold the property as advertised.

On the day of sale and just before bidding began, Keith K. Hunt, another attorney for Acton Griscom, notified the crowd assembled that Acton Griscom, as an assignee of W. L. McClung, claimed the property by virtue of the sale to McClung on September 27, and that Griscom would pursue his claim for the property against any purchaser whose bid was accepted on that day. After this statement was read, the property was offered and Maurice Neumuller bid $5,000 for it. Mr. Hunt, when requested by the sheriff to make a

bid on the property, declined to do so, stated that the property belonged to his client and again offered the check to pay for it. Thereupon Mr. Maurice Neumuller jumped his own bid to $5,200 and the property was cried out to him.

Acton Griscom, as assignee of McClung, filed his bill in chancery praying that the sheriff be required to accept McClung's bid of $5,100 made at auction on September 27, 1941, and that he be required to deliver to him the property levied upon and advertised for sale. The trial court denied appellant the relief prayed for and dismissed the bill. From that decree Acton Griscom, as assignee, obtained this appeal.

■ Appellant contends that this is not a suit for the specific performance of an executory contract because, when the property was cried out to the highest bidder, nothing remained to be done except for the bidder to pay the cash and the sheriff to deliver the property. The mere statement of appellant's claim clearly demonstrates that the contract between the parties was executory and not executed. It is true that at the fall of the hammer the contract was complete. An executory contract is "one in which a party binds himself to do, or not to do, a particular thing, whereas an executed contract is one in which the object of the agreement is performed and everything that was to be done is done." 12 Am. Jur. 507.

■ The legal effect of the highest bid at the sheriff's sale was a promise on the part of the bidder to pay the sum bid and a promise on the part of the sheriff, after he accepted the bid and knocked the property down at the auction sale, to deliver the property advertised to the bidder upon receipt of payment. The contract remained executory as to each party until his promise was fulfilled.

Appellant states in his brief that "on a sale under execution * * * the purchaser is on all-fours with a purchaser at a judicial sale after the court has confirmed the sale." This is quite true. Judge Burks the elder, in *Hurt* v. *Jones*, 75 Va. 341, 347, states that, on default of a bidder after the sale has been confirmed, "the proceeding to enforce payment, whether by bill, or in the more summary way, by rule, is

substantially a proceeding for the specific performance of a contract."

The allegations and prayer of complainant's bill clearly reveal that he was proceeding on the theory that he was entitled to specific performance of a contract of sale of personal property. This fact is emphasized in that part of his bill in which it is alleged that the property levied on "has peculiar and unusual value at this time by reason of the National Emergency, and your Orator has a ready market for the sale thereof not ordinarily available, but existing now by reason of the National Defense Program in which the said Culm Coal can be used by the Government and its agencies in its National Defense Program."

It is apparent that this allegation was made to bring the case within the exception to the general rule that a court of equity will not entertain jurisdiction for the specific performance of an agreement respecting personal property where compensation and damages furnish a complete and adequate remedy.

While the sheriff admitted in his answer that the culm coal, by reason of the national emergency, did have unusual value and alleged that a greater part of this value accrued between the time of the first sale and the date of tender, neither side introduced evidence tending to show any peculiar or unusual value of the property in question. The only effect of the allegation and the admission is to establish the fact that the national emergency had created a demand for this particular class of property and its market value had been greatly enhanced. But the simple fact that personal property has enhanced in value does not give equity jurisdiction to specifically enforce the contract of sale of such property.

Judge Crump, speaking for the special court in *Walker* v. *Henderson*, 151 Va. 913, 931, 145 S. E. 311, said: "The remedy of specific performance, however, when the transfer of personal property is sought, is rarely allowed by a court of equity."

Appellant further contends that title to the property passed to him when the sheriff accepted his bid, that the sheriff retained possession of the property as security for the payment of the purchase money, and that, while the sheriff did not specifically notify him that the resale was at his risk, Code, sec. 6492\*, imposes this liability upon him.

Conceding that the statutory provisions require the resale to be made at the risk of the highest bidder at the first sale, still appellant's remedy at law is adequate. He could have seized the property in an action of detinue and, thus, in a common law action had his right to possession determined.

In *Langford* v. *Taylor*, 99 Va. 577, 580, 39 S. E. 223, it is held that a complainant must not only allege, but must prove, irreparable injury before he is entitled to specific performance of a contract of sale of personal property. The only allegation tending to prove irreparable damage was that the property had increased in value. This fact, if true, does not prove that appellant has suffered or will suffer irreparable damage.

Even if it be conceded that the allegations of complainant's bill and the admission in respondents' answer are sufficient to show that the property in question has a peculiar value and that complainant's remedy at law is not adequate, still he is not entitled to specific performance of his contract on the evidence introduced.

No principle of equity is more generally approved than that the specific performance of a contract is not a matter of absolute right but rests in a sound judicial discretion. In order for a litigant to avail himself of this extraordinary remedy, he must show that he has been able, ready, prompt, eager and willing to perform the contract on his

---

\*"If, at any sale by an officer, the purchaser does not comply with the terms of sale, the officer may sell the property, either forthwith or under a new advertisement, or return that the property was not sold for want of bidders. If, on a resale, the property be sold for less than it sold for before, the first purchaser shall be liable for the difference to the creditor, so far as is required to satisfy him, and to the debtor for the balance. This section shall not prevent the creditor from proceeding as he might have done if it had not been enacted."

part. He must not have remained quiet or held himself aloof so as to enforce or abandon the contract as events might prove advantageous. *Chilhowie Iron Co.* v. *Gardiner*, 79 Va. 305; *Powell* v. *Berry*, 91 Va. 568, 22 S. E. 365; *Showalter* v. *Hambrick*, 2 Va. Dec. 402, 25 S. E. 102; *Gish* v. *Jamison*, 96 Va. 312, 31 S. E. 521; *Adams* v. *Hazen*, 123 Va. 304, 96 S. E. 741; *Scott* v. *Albemarle Horse Show Ass'n*, 128 Va. 517, 104 S. E. 842; *Dyer* v. *Duffy*, 39 W. Va. 148, 19 S. E. 540, 24 L. R. A. 339; *Lowther Oil Co.* v. *Miller-Sibley Oil Co.*, 53 W. Va. 501, 44 S. E. 433, 97 Am. St. Rep. 1027.

The uncontradicted evidence in this case shows that W. L. McClung, assignor of appellant, was insolvent, and that he did not inform the sheriff that he had sold his bid to a responsible party until 33 days after default. On each of the three or four times that the sheriff demanded payment, McClung promised to settle promptly. Each of these promises was broken. He was not able, prompt or eager to perform the contract on his part. He trifled with the sheriff in the matter of paying the purchase price and delayed tender of payment for an unreasonable length of time. Such conduct, if approved, gives an irresponsible party, at a cash sale under execution, time to speculate on his bid at the expense of other interested parties. A court of equity responds only to conscience, good faith and reasonable diligence.

██ We find no error in the decree of the trial court, and it is affirmed.

*Affirmed.*