## CIRCUIT COURT OF FAIRFAX COUNTY

James E. Fey

v.

Richard J. Rappoport,
Chief of Police

February 11, 2002

Case No. (Law) 199538

BY JUDGE STANLEY P. KLEIN

Petitioner James E. Fey petitions this court for the issuance of a Writ of Mandamus ordering Richard J. Rappoport, Chief of Police, City of Fairfax Police Department, to issue him written proof of consultation with and favorable review of Fey's need to carry a concealed handgun pursuant to Va. Code § 18.2-308(B)(8) ("Police Credentials"). Fey contends that he retired from the Fairfax City Police Department ("Department") after more than fifteen years of service and that he is entitled to receive the Police Credentials. Rappoport responds that Fey is not entitled to the Police Credentials because he resigned rather than retired from the Department. Rappoport further contends that a Writ of Mandamus is not the proper vehicle for the relief Fey seeks from this court. The Court has considered the stipulated evidence and the briefs and arguments of counsel. For the reasons set forth in this letter opinion, the petition is denied.

### I. *Background*

Fey worked for the Department for seventeen years. On August 24, 2001, he voluntarily terminated his employment with the City of Fairfax, and on

September 7, 2001, he left the Department. He was not terminated for cause. Upon leaving the Department, Petitioner opted not to withdraw his accumulated contributions and interest in the Department's retirement plan. See Ex. 4. Accordingly, Petitioner is entitled to future benefits under the plan.

On August 30, 2001, Fey forwarded to Rappoport a formal written request that he be issued the Police Credentials authorizing him to carry a concealed weapon without obtaining a concealed handgun permit. See Ex. 2. Virginia Code § 18.2-308(B)(8) exempts certain retired police officers from the prohibitions set out in § 18.2-308 (the concealed weapons statute) if they obtain Police Credentials. Specifically, that code sub-section exempts:

> Any local law-enforcement officer retired from a police department [within the Commonwealth] (i) with a service related disability or (ii) following at least fifteen years of service with any such law-enforcement agency, board or any combination thereof, other than a person terminated for cause, provided such officer carries with him written proof of consultation with and favorable review of the need to carry a concealed handgun issued by the chief law-enforcement officer of the last such agency from which the officer retired. . . . The chief law-enforcement officer shall not without cause withhold such written proof if the retired law-enforcement officer otherwise meets the requirements of this section.
>
> For purposes of applying the reciprocity provisions of subsection P, any person granted the privilege to carry a concealed handgun pursuant to this subdivision, while carrying proof of consultation and favorable review required, shall be deemed to have been issued a concealed handgun permit.

Va. Code § 18.2-308(B)(8).

In a letter from Rappoport, Fey's request was denied on the basis that as he did not retire, but rather resigned from the Department before reaching "eligible retirement," the Department lacked the authority to issue the Police Credentials. See Ex. 3. Petitioner then filed this mandamus action to compel Rappoport to provide him with the Credentials. Fey contends that he needs the right to carry a concealed weapon because as a former police officer, he fears for his safety.

## II. *Analysis*

A writ of mandamus is an extraordinary remedy used to compel public officers to perform their purely ministerial duties under the law. *Earley v. Landsidle*, 257 Va. 365, 369 (1999); *Richlands Medical Ass'n v. Commonwealth*, 230 Va. 384, 386 (1985). A ministerial duty is one that does not require the use of discretion or personal judgment, and accordingly, a writ of mandamus cannot be used to compel a discretionary decision or judgment call. *Dovel v. Bertram*, 184 Va. 19, 22 (1945) (defining ministerial act as "one which a person performs in a given state of facts and prescribed manner of obedience to the mandate of legal authority without regard to, or the exercise of his own judgment").

The Virginia Supreme Court has been clear that a writ of mandamus is an extraordinary and limited remedy. *Richmond-Greyhound Line, Inc. v. Davis*, 200 Va. 147, 151 (1958). In *Davis* the Court held:

> A writ of mandamus is an extraordinary remedial process, which is not awarded as a matter of right but in the exercise of a sound judicial discretion. Due to the drastic character of the writ, the law has placed safeguards around it. Consideration should be had for the urgency which prompts an exercise of the discretion, the interests of the public and third persons, the results which would follow upon a refusal of the writ, as well as the promotion of substantial justice. *In doubtful cases the writ will be denied, but where the right involved and the duty sought to be enforced are clear and certain and where there is no other available specific and adequate remedy, the writ will issue.*

*Id.* (emphasis added).

Three elements must be satisfied before a court can issue a writ of mandamus: (1) the petitioner must have a clear legal right to the relief sought; (2) the respondent must have a legal duty to perform the act the petitioner seeks to compel; and (3) there must be no other adequate legal remedy. *Richmond-Greyhound*, 200 Va. at 152. Moreover, "the co-existence of these elements, standing alone, will not always suffice to justify the issuance of the writ, in the discretion of the court, [but] the absence of [any] of these elements will make the issuance of the writ invalid." *Id.*

Here, the parties agree that elements (1) and (2) of the *Richmond-Greyhound* test are analytically identical.[1] Hence, this Court must determine: (1) whether Fey retired within the meaning of § 18.2-308(B)(8); and (2) whether Fey otherwise has an adequate remedy at law.

## A. *Whether Fey Retired from the Department*

Fey urges the Court to use the plain meaning of the word "retire" when construing the statute. Fey asserts that the common meaning of retire is the "removal or withdrawal from service, office, or business." See *Webster's Encyclopedic Unabridged Dictionary of the English Language* 1224 (1989). The Court, however, finds another dictionary's definition of retire to be more representative of the word's common usage. The *Oxford English Dictionary* defines retire as "to withdraw from office or an official position, to give up one's business or occupation *in order to enjoy more leisure or freedom.*" *Oxford English Dictionary* 2521 (1971) (emphasis added). Fey did not resign to "enjoy more leisure or freedom"; he resigned with the intent of pursuing alternate employment. See Ex. 1. In other words, he quit. Accordingly, the Court finds that Fey did not retire within the plain meaning of that word.

While the Virginia General Assembly could have exempted from the concealed weapons prohibition any local law enforcement officer who terminated employment after a certain number of years, it specifically did not. Instead, Virginia Code § 18.2-308(B)(8) only exempts "any local law-enforcement officer retired from a police department." Va. Code § 18.2-308(B)(8) (emphasis added). "The primary objective of statutory construction is to ascertain and to give effect to legislative intent." *Commonwealth v. Zamani,* 256 Va. 391, 395 (1998). When

---

[1] In his brief, Fey argued that Rappoport must perform the purely ministerial act of issuing the Police Credentials. During oral argument, however, his counsel conceded that even if Fey had retired from the Department, Rappoport retained the discretion to deny the issuance of the Police Credentials for "cause." See Va. Code § 18.2-308(B)(8). As a result, counsel orally requested that the Court treat the petition as a request to compel Rappoport to "consult" with Fey, as the consultation would establish that no cause exists to deny Fey the Police Credentials and Rappoport would therefore be required to issue them. As the petition is denied on other grounds, this Court need not decide whether the discretion granted to the chief law enforcement officer of a police department or sheriff's office under § 18.2-308(B)(8) would itself necessarily preclude the issuance of a writ of mandamus when a request for Police Credentials is denied. See *Giles County Board of Supervisors v. Carr & Munsey,* 222 Va. 379, 380 (1981) (finding discretionary judgment is involved when removing an employee "for cause").

the language of a statute is clear and unambiguous, a court may consider only the words of the statute to determine its meaning. *Hubbard v. Henrico, Ltd. Partnership*, 255 Va. 335, 339 (1998). "The legislature's intent must be determined from the words used, unless a literal construction would yield an absurd result." *Ragan v. Woodcroft Village Apts.*, 255 Va. 322, 325-26 (1998). "Thus, when the legislature has used words of a clear and definite meaning, the courts cannot place on them a construction that amounts to holding that the legislature did not intend what it has actually expressed." *Hubbard*, 255 Va. at 339 (citation omitted).

Manifestly, in determining whether Fey had a "clear legal right" to the Police Credentials, this Court must decide whether he *retired from* the Department. The Virginia Code provides that "any locality may establish a system for the retirement of . . . the members of the local police or fire departments." Va. Code § 15.2-1510. The parties agree that the City of Fairfax has set up such a retirement plan in the Code of the City of Fairfax, Virginia. Accordingly, the Fairfax City Code controls whether Fey retired within the meaning of § 18.2-308(B)(8).

Fey argues that the wording of § 66-12 of the Fairfax City Code titled "Separation" equates resignation and retirement. Fey is mistaken. Section 66-12 provides in relevant part that "all separations of employees from positions in the career service shall be designated as a resignation (also to be used for retirement), lay off, dismissal, disability or death." Fairfax City Code § 66-12. Section 66-12 does not equate resignation and retirement. Rather, it denotes that retirement is a subsection of the broader category of resignation. While retiring is one way to resign under the Fairfax City Code, it is not the sole means of doing so. Simply stated, all retirements constitute resignations under the Fairfax City Code, but not all resignations are retirements. For example, if an employee quit during his first hour on the job, he clearly would have resigned, but one could not reasonably conclude that he had retired.

On August 24, 2001, Fey delivered to the Department a Memorandum, which he delineated as pertaining to the "Subject" of his "Resignation." That Memorandum stated as follows:

> I have decided after much deliberation to resign from the City of Fairfax Police Department. I have enjoyed the seventeen years I have spent here; however, with your recent decision to transfer me from the criminal investigation division *I have decided to accept another employment offer*. My last day will be September 7, 2001.

See Ex. 1 (emphasis added).

Pursuant to Fairfax City Code § 66-12(1), titled "Resignation," in order for an employee "to resign in good standing," he or she must notify his department head at least two weeks before leaving. The resignation notice must be in writing and state the reasons for leaving. Fey's Memorandum was dated two weeks before his termination date and articulated exactly why he was leaving. It cannot be seriously questioned that this Memorandum constituted Fey's written resignation from the Fairfax City Police Department.

In addition, Fey concedes that he did not qualify to retire under any of the specifically enumerated retirement options provided in the Fairfax City Code. The three designated categories of retirement are Normal Retirement (§ 66-321), Delayed Retirement (§ 66-322), and Disability Retirement (§ 66-323). Section 66-321 defines the "normal retirement date" for Department employees as the first day of the month following the date on which the employee attains age fifty-five, provided he or she has completed five years of service, or the date on which the employee completes twenty-five years of service. Section 66-322 applies to employees who continue to work after they reach their normal retirement date, and § 66-323 applies to employees who have become disabled after completing five years of service. Fey was not fifty-five when he submitted his letter of resignation; nor did he work for Fairfax City for twenty-five years, continue to work after his normal retirement date, or become disabled during his tenure with Fairfax City.

Finally, the plain language of Fairfax City Code § 66-408 belies any claim that Fey retired from the Department. That section provides in pertinent part as follows:

> In the event of the termination of a participant's employment with the city, other than by death, *prior to his retirement hereunder* but after he has completed five or more years of credited service, there shall be paid to such participant, a monthly retirement allowance determined as herein below provided, commencing at the election of the participant, on the first day of any month coincident with or following the *later of his date of termination of employment or his attainment of his normal retirement date* ... provided, however, that any participant shall have the right, at any time after termination of employment and prior to the commencement of payment of a deferred retirement allowance, to receive in a lump sum his accumulated contributions as of the date such payment is requested, but such payment shall terminate the participant's rights to a deferred retirement allowance hereunder.

Fairfax City Code § 66-408 (emphasis added).

Section 66-408 specifically recognizes that a participant's employment may terminate *"prior to his retirement hereunder."* Fey apparently understood that this section governed his right to later seek a deferred retirement allowance, as, on September 28, 2001, he wrote to Fairfax City and advised: "Upon my *separation* from employment with the City of Fairfax, *I do not wish to withdraw my accumulated contributions and interest at this time."* See Ex. 4 (emphasis added). As such, Fey himself recognized that he had terminated his employment with the Department before retiring, and therefore could not have *"retired from* a police department . . . following at least fifteen years of service." Va. Code § 18.2-308(B)(8).

Under Virginia law, mandamus is an appropriate remedy only when a petitioner seeks to vindicate a clear legal right. *Richmond, F. & P. RR. v. Fugate*, 206 Va. 159, 160-61 (1965); *Richmond-Greyhound*, 200 Va. at 151-52. A writ of mandamus is to be reserved for those cases where the petitioner has a clear and undeniable legal right that the Court must enforce. *Richmond, F. & P. RR.*, 206 Va. at 164. "The primary purpose [of the writ] is to enforce a clearly established right. . . . Its principal function is to command and execute, and not to inquire and adjudicate." *Id.* In this case, after considering the common usage of the word retire and the applicable Virginia State and Fairfax City Code provisions, Fey did not clearly retire from the Department, within the meaning of § 18.2-308(B)(8). Accordingly, the Court denies Fey's writ of mandamus on the ground that he has not met his burden of establishing a clear and absolute right to the relief sought.

## B. *Whether Fey Has an Adequate Legal Remedy*

In order for a writ of mandamus to issue, Fey must further establish that he has no other adequate remedy at law for the relief sought. "The requirement that a litigant who seeks the issuance of a writ of mandamus must have no adequate remedy at law is deeply imbedded in the jurisprudence of this Commonwealth." *Hertz v. Times-World Corp.*, 259 Va. 599, 608 (2000). It is fundamental that a writ of mandamus will never issue where the aggrieved party has "another adequate remedy at law, by action or otherwise" that is "sufficiently adequate to redress the grievance complained of." *Hall v. Stuart*, 198 Va. 315, 324 (1956).

Fey contends that as a former police officer, he is concerned that a criminal he brought to justice might seek retribution against him, and, as a result, he should be allowed to carry a concealed weapon for his protection. The Court fully accepts the validity of this concern. During oral argument, Fey argued that the right to petition the court for a concealed handgun permit

pursuant to Va. Code § 18.2-308(D) did not afford him an adequate remedy at law because (1) such a permit would only authorize him to carry a concealed handgun; and (2) he would have to pay the statutorily prescribed fee for obtaining such a permit. The Court finds Fey's arguments unpersuasive.

Fey confuses an *adequate* remedy at law with an *equal* remedy at law.[2] A literal return to the *status quo ante* is not often available under Virginia law. See *id.*; *Griscom v. Childress*, 183 Va. 42, 46 (1944) (holding that specific performance is inappropriate where damages are recoverable and adequate); see also *Chattin v. Chattin*, 245 Va. 302, 306-07 (1993) (holding that an award of specific performance is not an absolute right, but is in the discretion of the trial court). Here, Fey seeks to protect himself through the right to carry a concealed weapon. Virginia Code § 18.2-308(D) provides a mechanism for him to obtain the right to carry a concealed handgun for his safety. He need not also have the right to carry concealed switchblades, blackjacks, razors, nun chucks, or any of the other weapons delineated in Virginia Code § 18.2-308 to adequately address his legitimate concerns.

Further, pursuant to § 8.2-308(K), the total cost for the filing and processing of a concealed handgun petition may not exceed fifty dollars.[3] The permit covers a period of five years and shall be reissued upon application absent "good cause shown for refusing to reissue a permit."[4] Va. Code § 18.2-308(I). The requirement for the payment of the filing fee cannot constitute a basis for this Court to conclude that Fey has no adequate remedy at law. Hence, Fey's petition fails for this additional reason.

---

[2] For example, under Virginia law, if a person were wrongfully discharged from a job that provided certain financial and intellectual rewards, the individual would not be able to obtain re-employment in the former position as a judicial remedy because monetary damages would be deemed to be an adequate, albeit less than equal, remedy at law. See *Thompson v. Commonwealth*, 197 Va. 208, 214 (1955) ("It is generally true that 'courts of equity will not entertain suits to enforce specifically contracts for personal services, or acts involving skill, labor, or judgment'.") (citation omitted).

[3] Fey would attain the age of fifty-five during the first term of a concealed handgun permit. If he applies for a deferred retirement allowance pursuant to Fairfax City Code § 66-408, upon reaching the normal retirement age of fifty-five, he may thereafter be entitled to the application fee exemption set out in Virginia Code § 18.2-308(K).

[4] If Fey were disqualified from obtaining a concealed weapon permit (see Va. Code § 18.2-308(E)), Rappoport would necessarily have had "cause" to deny him the requested Police Credentials. See Va. Code § 18.2-308(D) ("The chief law-enforcement officer shall not without cause withhold such written proof *if the retired law-enforcement officer otherwise meets the requirements of this section.*") (emphasis added).

198

### III. *Conclusion*

Accordingly, for the reasons stated above, Fey's Petition for a Writ of Mandamus is dismissed.