COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:  Judges Beales, Alston and O'Brien
Argued at Alexandria, Virginia


REBECCA ALLEN

                                                              OPINION BY
v.        Record No. 1702-15-4                   JUDGE ROSSIE D. ALSTON, JR.
                                                              AUGUST 30, 2016
JOSEPH WILLIAM ALLEN


                FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                              James C. Clark, Judge

           Daniel L. Gray (Adele M. Garmirian; Cooper Ginsberg Gray,
           PLLC, on briefs), for appellant.

           Thomas P. Silis (Trevor D. Anderson; Silis & Associates, PLLC,
           on brief), for appellee.


       Rebecca Allen (wife) appeals the decision of the trial court overruling her plea in bar and

granting Joseph William Allen (husband) a divorce.  Wife argues first, that the trial court erred in

overruling her plea in bar because the trial court found the parties' post-nuptial agreement to be a

valid and enforceable contract and the post-nuptial agreement contained a provision barring

husband from seeking a divorce for a period of 20 years.  Second, wife argues that the trial court

erred in entering a final decree of divorce because the post-nuptial agreement expressly barred

husband from pursuing a dissolution of the marriage or obtaining any order or decree that would

disqualify wife from husband's health insurance coverage.  Third, wife argues that she is entitled

to fees and costs associated with the divorce litigation and this appeal.  We disagree and affirm

the decision of the trial court.

BACKGROUND

The parties were lawfully married on June 21, 1980, in Gibson City, Illinois. On December 21, 2012, wife filed for divorce in the Fairfax County Circuit Court. Wife's divorce suit was subsequently non-suited upon the parties entering an agreement entitled "Memorandum of Understanding." The Memorandum of Understanding was signed by the parties on November 25, 2013.

On April 4, 2014, the parties entered a post-nuptial agreement. The post-nuptial agreement invalidated the parties' Memorandum of Understanding and contained the following provision, which is at issue in this case:

> CONTINUATION OF MARRIAGE. Husband shall not pursue a dissolution of the marriage for a period of 20 years or obtain any judicial order or decree that results in wife's disqualification of health insurance coverage by Caterpillar [Inc.] or any of its subsidiaries, prior to the 20 year period from the date of this agreement. If the husband takes any actions that result in the wife being disqualified from said health insurance coverage, he shall indemnify and hold the wife harmless for any expenses from medical treatment that would have otherwise been covered by said health insurance, provided however, husband's obligation shall cease in the event the health insurance coverage is no longer available through Caterpillar or any of its subsidiaries through no fault of husband or 20 years from the date of this agreement; whichever first occurs.

Husband filed for divorce on November 12, 2014, alleging that the parties had been living separate and apart for more than one year. On April 2, 2015, wife filed a plea in bar arguing that pursuant to the parties' post-nuptial agreement, husband was precluded from seeking a divorce for a period of 20 years. Specifically, wife argued that she was dependent on husband's employer's health insurance due to her increasing state of illness and that due consideration was exchanged for husband's promise not to seek a divorce.

On June 3, 2015, husband filed his response to wife's plea in bar. Husband admitted that he worked for Caterpillar Inc., that wife was covered under his Caterpillar health insurance policy, that his wife had become increasingly ill, and that Caterpillar would not continue to provide wife with health insurance coverage in the event of a divorce. Husband argued however, that (1) the provision at issue should be rejected on grounds that it violates Virginia public policy, (2) the provision is unconscionable on its face, and (3) the provision at issue provides wife with an alternative adequate remedy; holding husband personally liable for any out-of-pocket medical expenses incurred by wife.

The trial court heard oral argument on wife's plea in bar on June 10, 2015. Wife argued that the intent of the continuation of marriage provision was to ensure her continued health insurance coverage. Wife further argued that she proposed the provision and that due consideration was exchanged for it. Specifically, wife alleged that the consideration she provided was waiver of her right to portions of husband's 401(k). Wife maintained that husband understood the agreement and voluntarily entered into the contract with the advice of counsel and therefore, he should not be permitted to seek a divorce for a period of 20 years.

Husband responded, arguing that the continuation of marriage provision was not an absolute 20-year bar against him seeking a divorce. Rather, husband argued that the provision was intended to ensure that wife maintained her health insurance coverage for 20 years. Husband focused on the following language in the post-nuptial agreement: "If the husband takes any actions that result in the wife being disqualified from said health insurance coverage, he shall indemnify and hold the wife harmless for any expenses from medical treatment that would have otherwise been covered by said health insurance . . . ." Husband contended that this language provided a "safety valve" in the event the husband breached the agreement and failed to provide wife with health insurance. Husband's primary contention was that the purpose and intent of the

parties entering the contract was to ensure that wife had medical coverage, not to prevent or bar husband from seeking a divorce for 20 years.

On July 16, 2015, the trial court issued a letter opinion overruling wife's plea in bar. The trial court stated "[a]fter consideration of the pleadings and oral argument, the [c]ourt will overrule the Plea in Bar." No further explanation was provided. An order reflecting the trial court's decision was filed by the parties and later entered by the trial court.

On July 30, 2015, wife filed a motion for reconsideration. Wife argued that the trial court's ruling was in error because it found that there was a valid and binding contract and overruled the plea in bar despite a contractual provision barring husband from seeking a divorce for 20 years. Wife further argued that it was error for the trial court not to dismiss husband's divorce suit in light of the trial court's determination that the post-nuptial agreement was a valid enforceable contract. Wife also alleged that husband entered the contract with full knowledge of its provisions, the binding effects of those provisions, as well as with the aid of legal counsel, and thus, knew he was agreeing not to seek a divorce for 20 years. Last, wife argued that the contract did not provide an adequate remedy at law in the event of a breach, but rather, prohibited husband from seeking a divorce.

On July 31, 2015, wife filed a motion for attorney's fees. Wife argued that she incurred substantial costs and attorney's fees for husband's intentional breach of the post-nuptial agreement. Specifically, wife argued that husband sought a divorce from wife less than seven months after entering the post-nuptial agreement, which specifically barred him from taking such action.

On August 14, 2015, husband filed his response to both wife's motion for reconsideration and motion for attorney's fees. With respect to the motion for reconsideration, husband argued that the trial court's ruling was not in error because the continuance of marriage provision

- 4 -

provided wife with an adequate remedy at law in the event husband sought a divorce; namely, a damages clause making husband personally liable for any and all medical costs incurred by wife during the contemplated 20-year period. With respect to the motion for attorney's fees, husband argued first that he was entitled to fees because he attempted in good faith to resolve the matter while the trial court's decision on the plea in bar was still pending. Second, he contended that pursuant to the terms of the post-nuptial agreement, he was entitled to fees because he was successful in his defense against wife's plea in bar. In support, husband cited to paragraph 14 of the post-nuptial agreement, which provides in relevant part, "[a]ny such cost incurred by a party in the successful defense to any action for enforcement of any such provision shall be borne by the party seeking to enforce compliance."

On October 15, 2015, the trial court entered a final order of divorce on grounds that the parties had been living separate and apart for more than one year. The trial court further ordered husband to pay wife's attorney's fees in the amount of $12,500.[1] Wife filed her notice of appeal on October 26, 2015. This appeal followed.

ANALYSIS

I. FORBEARANCE ON BRINGING OR PROSECUTING A VALID SUIT FOR DIVORCE CONSTITUTES VALID CONSIDERATION FOR ENTERING A CONTRACT.

We start by acknowledging that the right to personal choice regarding marriage is inherent in the concept of individual autonomy. Loving v. Virginia, 388 U.S. 1, 12 (1967) ("The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men."); Zablocki v. Redhail, 434 U.S. 374, 384 (1978) (recognizing that "the right to marry is of fundamental importance for all individuals").

---

[1] Although the appendix is devoid of any record or transcript indicating the trial court's ruling on wife's motion to reconsider, this Court, based on the trial court's denial of wife's plea in bar and subsequent entry of the final order of divorce, interprets that to mean that the motion was denied.

Decisions concerning marriage are among the most intimate that an individual can make. Id. Choices about marriage are of the utmost importance because marriage "fulfils yearnings for security, safe haven, and connection that express our common humanity, civil marriage is an esteemed institution, and the decision whether and whom to marry is among life's momentous acts of self-definition." Goodridge v. Dep't of Pub. Health, 798 N.E.2d 941, 955 (Mass. 2003).

> Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects. . . . [I]t is an association for as noble a purpose as any.

Griswold v. Connecticut, 381 U.S. 479, 486 (1965).

With these principles in mind we observe that the general rule in this country and in Virginia is that forbearance on bringing or prosecuting a suit for divorce is recognized as valid consideration supporting a contract. Upton v. Ames & Webb, Inc., 179 Va. 219, 227, 18 S.E.2d 290, 293 (1942); Polson v. Stewart, 45 N.E. 737, 739 (Mass. 1897); Duffy v. White, 73 N.W. 363, 365 (Mich. 1897); Adams v. Adams, 91 N.Y. 381, 384 (N.Y. 1883).[2] The cases which hold that reconciliation agreements are not against public policy generally reason that these agreements tend to promote and stabilize the marriage relationship. Tyson v. Tyson, 149 P.2d 674, 678 (Ariz. 1944). In Adams, the Court of Appeals of New York explained, and we agree, that:

> Agreements to separate have been regarded as against public policy, but it would be strangely inconsistent if the same policy should condemn agreements to restore marital relations, after a

---

[2] In re Marriage of Tabassum, 881 N.E.2d 396, 407 (Ill. App. Ct. 2007) ("Forbearance of bringing or prosecuting a divorce action has been directly recognized as consideration in other states, and we find no compelling reason to deviate from these authorities."); Dressler v. Blosser, 1981 Ohio App. LEXIS 14486, at *6-7 (Ohio Ct. App. July 1, 1981) ("An agreement on the part of a wife to refrain from bringing an action against her husband for divorce and alimony constitutes a sufficient consideration for a conveyance of property by him to her[.]").

> temporary separation had taken place. While the law favors the settlement of controversies between all other persons, it would be a curious policy which should forbid husband and wife to compromise their differences, or preclude either from forgiving a wrong committed by the other.

Adams, 91 N.Y. at 384. See also Upton, 179 Va. at 227, 18 S.E.2d at 293 ("It would be a curious policy which would forbid a husband or wife who has filed a well-founded cross-suit for divorce from making a contract with the other spouse which would operate to prevent a severance of their marital relations."). And it is the sacred nature of the marriage relationship that has led Virginia courts to rule that "[n]either the law nor public policy favors an agreement between husband and wife in furtherance of a divorce." Id.

For these reasons, we find that husband's decision to forbear his prerogative to pursue a divorce for a period of 20 years, as provided in the parties' post-nuptial agreement, constituted valid consideration supporting the contract. We now turn to the issue of the intent of the parties in entering the post-nuptial agreement.

### II. THE INTENT OF THE PARTIES IN ENTERING THE POST-NUPTIAL AGREEMENT WAS TO ENSURE THAT HUSBAND PROVIDED WIFE WITH HEALTH INSURANCE FOR A PERIOD OF 20 YEARS; NOT TO BAR HUSBAND FROM SEEKING A DIVORCE FOR 20 YEARS.

The parties do not dispute that the post-nuptial agreement is a valid and binding contract or that the contract is unambiguous. The issue before this Court is whether the "Continuation of Marriage" provision should be interpreted as barring husband from seeking a divorce for a period of 20 years. Because the trial court's decision to deny wife's plea in bar predicated its decision to grant husband a divorce, we will address wife's first two assignments of error together.

"On appeal, [this] Court reviews a trial court's interpretation of a contract *de novo*." Plunkett v. Plunkett, 271 Va. 162, 166, 624 S.E.2d 39, 41 (2006) (citing Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002)). "In construing

the terms of a property settlement agreement, just as in construing the terms of any contract, [this Court is] not bound by the trial court's conclusions as to the construction of the disputed provisions." Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986). "[I]f all the evidence which is necessary to construe a contract was presented to the trial court and is before the reviewing court, the meaning and effect of the contract is a question of law which can readily be ascertained by this [C]ourt." Fry v. Schwarting, 4 Va. App. 173, 180, 355 S.E.2d 342, 346 (1987).

"Property settlement agreements are contracts subject to the same rules of formation, validity, and interpretation as other contracts." Bergman v. Bergman, 25 Va. App. 204, 211, 487 S.E.2d 264, 267 (1997) (citing Smith, 3 Va. App. at 513, 351 S.E.2d at 595; Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985)).

Our jurisprudence has established that:

> Contracts are construed as written, without adding terms that were not included by the parties. Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. A contract is not ambiguous merely because the parties disagree as to the meaning of the terms used. Furthermore, contracts must be considered as a whole "without giving emphasis to isolated terms."

TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C., 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002) (citations omitted).

Upon review, this Court "cannot read into [the contract] language which will add to or take away from the meaning of the words already contained therein." Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984). The Supreme Court has held that when interpreting the plain meaning of a contract's terms, the court assigns reasonable meaning to the words and clauses in the contract and assumes that no word or clause is without purpose. PMA Capital Ins. Co. v. U.S. Airways, Inc., 271 Va. 352, 358, 626 S.E.2d 369, 372-73 (2006).

- 8 -

> It is the function of [this Court] to construe the contract made by the parties, not to make a contract for them. The question for [this Court] is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares.

Wilson, 227 Va. at 187, 313 S.E.2d at 398 (quoting Meade v. Wallen, 226 Va. 465, 467, 311 S.E.2d 103, 104 (1984)).

"In determining the intent of the parties, courts will generally not infer covenants and promises which are not contained in the written provisions." Pellegrin v. Pellegrin, 31 Va. App. 753, 759, 525 S.E.2d 611, 614 (2000). "When the terms of a disputed provision are clear and definite, it is axiomatic that they are to be applied according to their ordinary meaning." Smith, 3 Va. App. at 514, 351 S.E.2d at 595. "[I]f the intent of the parties can be determined from the language they employ in their contract, parol evidence respecting their intent is inadmissible." Golding v. Floyd, 261 Va. 190, 192-93, 539 S.E.2d 735, 737 (2001).[3]

Wife contends that the language, "Husband shall not pursue a dissolution of the marriage for a period of 20 years," should be interpreted as a complete bar to husband seeking a divorce for 20 years. We disagree.

The first flaw in wife's argument is that it is premised on "isolated terms" and words and fails to consider the contract as a whole. Am. Spirit Ins. Co. v. Owens, 261 Va. 270, 275, 541 S.E.2d 553, 555 (2001). Wife focuses exclusively on the one sentence that purportedly bars husband from seeking a divorce for 20 years as well as other isolated terms interspersed

---

[3] This Court notes that while the trial court heard parol evidence relating to the parties' intent in entering the post-nuptial agreement, nothing in the record indicates whether the trial court denied wife's plea in bar or entered the final decree of divorce based on that parol evidence. This Court's resolution of the case is not based on any consideration of the parol evidence that was put before the trial court, that was included on brief, or that was presented at oral argument.

throughout the agreement, while disregarding all of the language in the contract that clearly demonstrates that the parties contemplated the possibility of husband obtaining a divorce prior to the expiration of 20 years. In support of her position, wife cites the following language: (1) the contract is titled "Post Nuptial Agreement," (2) the preamble states "in anticipation of the continuation of their marriage" and "in consideration of the premises, the contemplated marriage between the parties," (3) the provision at issue is titled "Continuation of Marriage," and (4) that provision states "Husband shall not pursue dissolution of the marriage for a period of 20 years." Wife argues that the combination of these terms and phrases evinces the parties' intent to bar husband from obtaining a divorce. However, the inquiry for this Court does not end by isolating language that supports a particular position. Rather, this Court must look at the contract as a whole, giving meaning to each and every word contained within the four corners of the agreement. Id.; PMA Capital Ins. Co., 271 Va. at 358, 626 S.E.2d at 372-73; Eure, 263 Va. at 631, 561 S.E.2d at 667 (stating "on appeal we are not bound by the trial court's interpretation of the contract provision at issue; rather, we have an equal opportunity to consider the words of the contract within the four corners of the instrument itself").

The post-nuptial agreement also contains several clauses which make clear that at the time the contract was entered, the parties contemplated husband obtaining a divorce prior to the expiration of 20 years. Specifically, paragraph c(ii) of the "Disposition of Personal Property" provision provides "*In the event of a divorce*, the above IRAs shall be equalized." Similarly, paragraph c(iii) of the same provision provides "If at the time [h]usband begins receiving his pension from Caterpillar, or any of its subsidiaries, *and the parties are still married*." Likewise, paragraph 19 titled "Affirmation, Ratification, and Incorporation in Decree" states "*In the event either party files for divorce*." (Emphasis added). Each of these phrases demonstrates that the parties clearly contemplated a divorce prior to the expiration of 20 years. If this Court were to

adopt wife's position, it would render these portions of the contract meaningless in contravention of well-settled principles of contract law. PMA Capital Ins. Co., 271 Va. at 358, 626 S.E.2d at 372-73.

Second, wife fails to acknowledge, let alone explain, why the damages clause, which immediately follows the isolated language she relies upon, does not establish that the parties' intent in entering the contract was to ensure that she maintained a high level of health insurance coverage rather than barring husband from seeking a divorce for 20 years

"The decision whether to grant specific performance of a contract is a matter submitted to the sound discretion of the trial court." Chattin v. Chattin, 245 Va. 302, 306, 427 S.E.2d 347, 350 (1993) (citing Griscom v. Childress, 183 Va. 42, 47, 31 S.E.2d 309, 312 (1944)). "Specific performance is an equitable remedy, which may be considered by the trial court where the remedy at law is inadequate and the nature of the contract is such that specific enforcement of it will not result in great practical difficulties." Id. (citing Thompson v. Commonwealth, 197 Va. 208, 212-13, 89 S.E.2d 64, 67 (1955)).

> Although the granting of specific performance is not a matter of absolute right, "when the contract sought to be enforced . . . has been proven by competent and satisfactory evidence, and there is nothing to indicate that its enforcement would be inequitable to a defendant, but will work injury and damage to the other party if it should be refused, in the absence of fraud, misapprehension, or mistake, relief will be granted by specific enforcement."

Id. at 307, 427 S.E.2d at 350 (quoting Haythe v. May, 223 Va. 359, 361, 288 S.E.2d 487, 488 (1982)). "[W]hen a contract has been made, and either party refuses to perform the agreement, equity enforces the performance of the contract specifically, by compelling the refractory party to fulfill his engagement according to its terms." Griffin v. Griffin, 62 Va. App. 736, 754, 753 S.E.2d 574, 582 (2014) (quoting Dunsmore v. Lyle, 87 Va. 391, 392, 12 S.E. 610, 611 (1891)).

- 11 -

The "Continuation of Marriage" provision provides:

> Husband shall not pursue a dissolution of the marriage for a period of 20 years or obtain any judicial order or decree that results in wife's disqualification of health insurance coverage by Caterpillar or any of its subsidiaries, prior to the 20 year period from the date of this agreement. If the husband takes any actions that result in the wife being disqualified from said health insurance coverage, he shall indemnify and hold the wife harmless for any expenses from medical treatment that would have otherwise been covered by said health insurance, provided however, husband's obligation shall cease in the event the health insurance coverage is no longer available through Caterpillar or any of its subsidiaries through no fault of husband or 20 years from the date of this agreement; whichever first occurs.

Husband clearly breached the contract by obtaining a divorce; the critical question is what is wife's remedy? The contract clearly spells out wife's remedy; that is husband's personal liability for any and all medical expenses she incurs over the next 20 years that would have been otherwise covered under husband's Caterpillar health insurance plan but for his obtaining a divorce. This Court cannot overlook the fact that the parties provided a specific remedy for husband's breach in the contract. To adopt wife's position would require this Court to ignore the remedy provision contained therein. PMA Capital Ins. Co., 271 Va. at 358, 626 S.E.2d at 372-73. To ignore the remedy provision would be asking this Court to ignore an essential provision of the contract. We reject this invitation. Wilson, 227 Va. at 187, 313 S.E.2d at 398. For these reasons, we conclude that the intent of the parties in entering the contract was to ensure that wife maintained her health insurance coverage; not to bar husband from obtaining a divorce for 20 years.

This conclusion is bolstered by the language of paragraph 7. Paragraph 7 titled "Health Insurance" states in relevant part:

> If loss of insurance is due to [h]usband's actions, he shall be responsible for paying the cost of comparable health insurance coverage, and if comparable health insurance coverage is not

- 12 -

available, he shall indemnify and hold wife harmless from any expenses for medical treatment that would have otherwise been covered by said health insurance.

Here again, the language of the contract focuses on protecting wife's health insurance coverage, not barring husband from seeking a divorce. This language confirms our understanding that the intent of the parties in entering the contract was to ensure that wife maintained her health insurance coverage at husband's expense for a period of 20 years; not to bar husband from obtaining a divorce for said period of time.

Because we conclude that the contract provides wife with an adequate remedy at law, we will not order specific performance, in this case, rescission of the final decree of divorce, because to do so would be inequitable and would lead to "great practical difficulties." Chattin, 245 Va. at 306, 427 S.E.2d at 350. As such, we affirm the decision of the trial court overruling wife's plea in bar and in entering the final decree of divorce.

### III. ATTORNEY'S FEES

Appellant contends that as a result of the compound errors of the trial court, she was forced to incur attorney's fees in her defense of husband's suit for divorce and this appeal, and thus, should be awarded all fees incurred to date. Because appellant combines two distinct issues in her assignment of error, we will address these issues separately.

### A. TRIAL COURT'S AWARD OF ATTORNEY'S FEES

Appellant argues first that the trial court erred in denying her request for payment of all fees and costs incurred in her defense of husband's divorce suit. We disagree.

"[A]n award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Richardson v. Richardson, 30 Va. App. 341, 351, 516 S.E.2d 726, 731 (1999) (quoting Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987)). An abuse of discretion occurs "only 'when reasonable jurists could

not differ'" as to the proper decision. Brandau v. Brandau, 52 Va. App. 632, 641, 666 S.E.2d 532, 537 (2008) (quoting Robbins v. Robbins, 48 Va. App. 466, 482, 632 S.E.2d 615, 623 (2006)). Code § 20-99(6) provides that "Costs may be awarded to either party as equity and justice may require." "In Virginia, Code §§ 20-79(b) and 20-99(5) provide the statutory basis for the broad discretionary authority circuit courts have to award attorney's fees and other costs as the equities of a divorce case and its ancillary proceedings may require." Tyszcenko v. Donatelli, 53 Va. App. 209, 222, 670 S.E.2d 49, 56 (2008). "[T]here is no prevailing-party entitlement to fees under Code §§ 20-79(b) and 20-99(5)." Id. at 223, 670 S.E.2d at 57. Instead, "after considering 'the circumstances of the parties' and 'the equities of the entire case,' a trial court may exercise its discretion and issue an award of attorney's fees and costs that is reasonable 'under all of the circumstances revealed by the record.'" Mayer v. Corso-Mayer, 62 Va. App. 713, 734, 753 S.E.2d 263, 273 (2014) (quoting Tyszcenko, 53 Va. App. at 223, 670 S.E.2d at 57). "[T]he key to a proper award of counsel fees [is] reasonableness under all of the circumstances revealed by the record." McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985).

> This highly deferential standard of review, of course, does not "simply mean that a circuit court may do whatever pleases it." It does mean that, for some decisions, "conscientious jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable." The trial court "has a range of choice, and its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." We apply this "bell-shaped curve of reasonability" based on our "venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie."

Carrithers v. Harrah, 63 Va. App. 641, 653-54, 762 S.E.2d 402, 408 (2014) (citations omitted).

In this case, the only dispute before the trial court was whether the post-nuptial agreement barred husband from obtaining a divorce for a period of 20 years. A review of the

record reveals the trial court considered the following prior to fashioning its award of attorney's fees: (1) wife's plea in bar and husband's responsive pleading, (2) oral argument and witness testimony relating to the intent of the parties in entering the post-nuptial agreement, and (3) wife's motion for reconsideration. After thorough consideration of all the evidence, the trial court awarded husband a divorce and ordered husband to pay wife $12,500 in attorney's fees. Based on the facts and circumstances of this case, it is clear that the trial court considered all of the relevant circumstances of the parties prior to awarding wife attorney's fees. Mayer, 62 Va. App. at 734, 753 S.E.2d at 273. As such, this Court cannot say that the trial court abused its discretion, and therefore, we affirm the trial court's award of fees to wife in the amount of $12,500.

### B. APPELLATE COURT ATTORNEY'S FEES AWARD

Appellant further contends that she is entitled to an award of fees and costs incurred as a result of this appeal. Specifically, she argues that she is entitled to said fees pursuant to the terms of the post-nuptial agreement because she was successful in her enforcement of the agreement. We disagree and find that each party should pay his or her own fees and costs incurred in this appeal.

The decision to award attorney's fees incurred on appeal is to be determined by the appellate court. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 694-95, 479 S.E.2d 98, 100 (1996); Gottlieb v. Gottlieb, 19 Va. App. 77, 95-96, 448 S.E.2d 666, 677 (1994). On appeal, this Court "has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment." O'Loughlin, 23 Va. App. at 695, 479 S.E.2d at 100. In general, attorney's fees are not recoverable unless a statutory provision or a contract between the parties allows otherwise. Tonti v. Akbari, 262 Va. 681, 685, 553 S.E.2d 769, 771 (2001).

In this case, the contract provides as follows:

> The parties agree that any expenses, including but not limited to, counsel fees, court costs, and travel, incurred by a party in the successful enforcement of any of the provisions of this Agreement, whether through litigation or other action necessary to compel compliance herewith, shall be borne by the defaulting party. Any such costs incurred by a party in the successful defense to any action for enforcement of any such provision shall be borne by the party seeking to enforce compliance.

On appeal in this case, both parties prevailed in successfully enforcing different provisions of the contract. Specifically, wife prevailed in establishing that husband breached the contract by obtaining a divorce prior to the expiration of 20 years. Likewise, husband prevailed in establishing that the remedy for his breach was his personal liability for wife's health insurance for a period of 20 years, not rescission of the final decree of divorce. Therefore, because we find that both parties prevailed in enforcing different provisions of the contract, each party is responsible for his or her own fees and costs incurred as a result in this appeal.

<u>Affirmed</u>.